# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE: TESTOSTERONE ) | |
| REPLACEMENT THERAPY ) | Case No. 14 C 1748 |
| PRODUCTS LIABILITY LITIGATION ) | MDL No. 2545 |
| -------------------------------------------------- ) | |
| This document relates to: *Potts v.* ) | |
| *Auxilium Pharmaceuticals, Inc.*, ) | Case No. 14 C 7902 |
| Case No. 1:14-cv-00345 (S.D. Ala.) ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge.

This case is before the Court on a motion to remand by plaintiffs Brian and Sandra Potts. Plaintiffs ask the court to remand the case to the Circuit Court of Baldwin County, Alabama, where they initially filed the case. For the reasons stated below, the Court grants plaintiffs' motion to remand.

## Background

Brian Potts and Sandra Potts, who are husband and wife, filed this suit in the Circuit Court of Baldwin County, Alabama. Plaintiffs asserted claims against Auxilium Pharmaceuticals, Inc., which manufactures, sells, and distributes a pharmaceutical product called Testim, and against Dr. Gregory Funk, who prescribed Testim for Brian Potts. Plaintiffs allege that Mr. Potts developed blood clots in his legs and pulmonary embolisms in both lungs from taking Testim.

Plaintiffs have sued Auxilium for strict product liability, negligence, breach of implied and express warranties, misrepresentation, and fraud. They assert a claim of medical malpractice against Dr. Funk. Specifically, plaintiffs allege that Dr. Funk

deviated from the applicable standard of care in prescribing Testim to Mr. Potts by failing to check his blood testosterone levels before and during his treatment with the drug and by prescribing Testim for an "off label" use and without first making a diagnosis of hypogonadism, the condition for which Testim is an approved medication. Compl. ¶101.

Auxilium removed the case to the Southern District of Alabama based on diversity of citizenship. The Judicial Panel on Multidistrict Litigation then transferred the case to this Court.

The plaintiffs and Auxilium are of diverse citizenship, but Dr. Funk, like plaintiffs, is a citizen of Alabama. Auxilium and Dr. Funk contend, however, that plaintiffs have no viable claim against Dr. Funk and that they named him as a defendant in an attempt to defeat diversity jurisdiction. Plaintiffs disagree and have moved to remand the case to state court. Seventh Circuit law governs the Court's decision on the motion to remand. In multidistrict litigation, procedural matters are governed by the law of the transferee court. *See, e.g., In re Pradaxa (Dabigatran Etexilate Prods. Liab. Litig.)*, No. 3:12–md–02385–DRH–SCW, 2013 WL 656822, at *2 (S.D. Ill. Feb 22, 2013)l; *In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*, 889 F. Supp. 2d 931, 936 n.7 (E.D. Ky. 2012) (fraudulent joinder issue); *Various Plaintiffs v. Various Defendants (Oil Field Cases)*, 673 F. Supp. 2d 358, 362 (E.D. Pa. 2009).

The parties' dispute involves the doctrine of "fraudulent joinder," the term used to describe a plaintiff's naming of a non-diverse defendant to destroy diversity of citizenship and preclude removal to federal court. *See, e.g., Walton v. Bayer Corp.*, 643 F.3d 994, 999 (7th Cir. 2011). In this circuit, a defendant is considered to be

fraudulently joined, and its citizenship is disregarded for diversity purposes, if, "after resolving all issues of fact and law in favor of the plaintiff," the plaintiff's claim has "no chance of success" against the in-state defendant. *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992); *see also Walton*, 643 F.3d at 999. The question the Court must decide is whether "there [is] any reasonable possibility that a state court would rule against the non-diverse defendant." *Poulos*, 959 F.2d at 73. If so, the defendant is not considered to have been fraudulently joined.

Defendants argue that plaintiffs' medical malpractice claim against Dr. Funk has no chance of success because it is barred by Alabama's two-year statute of limitations or its four-year statute of repose. Ala. Code § 6-5-482(a). The Court applies the substantive law of the transferor forum, Alabama, to determine this issue. *See, e.g., Chang v. Baxter Healthcare Corp.*, 599 F.3d 728, 732 (7th Cir. 2010) (in multidistrict litigation, the transferee court applies the substantive law of the transferor court).

Section 6-5-482 of the Alabama Medical Liability Act provides that a medical malpractice claim against a physician must be commenced

> within two years after the act, or omission, or failure giving rise to the claim, and not afterwards; provided, that if the cause of action is not discovered and could not reasonably have been discovered within such period, then the action may be commenced within six months from the date of such discovery or the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier; provided further, that in no event may the action be commenced more than four years after such act.

Ala. Code § 6-5-482(a). This statute contains both a period of limitations and a period of repose.

The Court begins with the four-year statute of repose. As indicated earlier, plaintiffs filed this lawsuit on June 25, 2014. It is not one hundred percent clear from the

3

complaint when plaintiffs allege that Dr. Funk prescribed Testim for Mr. Potts. They allege that "[a]fter taking multiple doses of Testim, on or about June 25, 2010, and within six months of the date of his first use of Testim," Mr. Potts was diagnosed with blood clots in his legs and pulmonary embolisms in both lungs. Compl. ¶ 48. Defendants read this as indicating that Dr. Funk prescribed Testim for Mr. Potts in January 2010. *See* Def. Dr. Funk's Resp. to Pls.' Mot. to Remand at 3; Def. Auxilium's Mem. in Opp. to Pls.' Mot. for Remand at 2.

Defendants contend that the date Dr. Funk prescribed Testim for Mr. Potts—January 2010, or at least before June 25, 2010—is when the "act . . . giving rise to the claim" occurred. They rely, however, on cases in which the legal injury occurred simultaneously with the allegedly negligent act. In *Ex parte Hodge*, 153 So. 3d 734 (Ala. 2014), the defendant surgeon left a foreign object in the plaintiff during surgery. The plaintiff "suffered an actionable legal injury at the time of the surgery . . ., regardless of when or to what extent the complications from the negligent act would be discovered." *Id.* at 745. In *Grabert v. Lightfoot*, 571 So. 2d 293 (Ala. 1990), the defendant conducted surgery to repair a hernia but failed to locate and repair it. In that case, the legal injury occurred immediately. "[I]t was immediately after the first, unsuccessful operation that the plaintiff was entitled to maintain an action against the surgeon. Because of the alleged negligence of the first surgeon, the plaintiff had 'suffered' a surgery that availed him nothing." *Hodge*, 153 So. 3d at 743 (citing *Grabert*, 571 So. 2d at 294). Finally, in *Tobiassen v. Sawyer*, 904 So. 2d 258 (Ala. 2004), the defendant failed to diagnose a stroke despite his symptoms and instead discharged him from the hospital, and the plaintiff suffered another stroke four days later. *See id.* at

4

261. The Supreme Court of Alabama said in *Hodge* that in *Tobiassen*, as in *Grabert* and *Hodge*, "the act of alleged medical malpractice immediately caused an identifiable injury to the complaining party and that injury fell outside the applicable time period . . . ." *Hodge*, 153 So. 3d at 743 (citing *Tobiassen*).

This case, however, is not one in which the legal injury occurred simultaneously with the alleged wrongful act. There is no basis to believe that Mr. Potts's legal injury— his development of blood clots and pulmonary embolisms from taking Testim—occurred simultaneously with Dr. Funk's prescription of the medication. The only allegation in the complaint regarding the manifestation of symptoms is the June 25, 2010 date on which Mr. Funk was diagnosed. When "the wrongful act or omission and the resulting legal injury do not occur simultaneously, the cause of action accrues and the limitations period of § 6-5-482 commences when the legal injury occurs." *Mobile Infirmary v. Delchamps*, 642 So. 2d 954, 958 (Ala. 1994). That is the situation in this case. On the present record, which includes only plaintiffs' complaint, the Court cannot say with any certainty that the "legal injury" occurred more than four years before June 25, 2014. As a result, the Court cannot say at this stage of the case that it is clear that the four year statute of repose bars plaintiffs' claims against Dr. Funk.

Defendants also argue that plaintiffs' medical malpractice claim against Dr. Funk is barred by section 6-5-482's two-year statute of limitations. Under *Mobile Infirmary*, plaintiffs' cause of action accrued when the legal injury occurred. *Mobile Infirmary*, 642 So. 2d at 958. As indicated earlier, plaintiffs allege that Mr. Potts was diagnosed with pulmonary embolisms in both lungs and blood clots in his legs on or about June 25, 2010. Compl. ¶ 48. Based on the complaint's allegations, that is when the legal injury

5

occurred, not eighteen months later, when plaintiffs allege that Mr. Potts first became aware of a connection between his use of Testim and the clots and embolism.  *Id.* ¶ 49.

If the limitations clock started running on June 25, 2010, plaintiffs' claim against Dr. Funk is time-barred.  Plaintiffs rely, however, on the six-month "safe harbor" found in section 6-5-482(a).  Under that provision, when "the cause of action is not discovered and could not reasonably have been discovered" within the two-year limitations period, then the plaintiff may sue "within six months from the date of such discovery or the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier.'  Ala. Code § 6-5-482(a).  This provision focuses not on discovery of the plaintiff's injury but rather on the plaintiff's discovery of "the cause of action," in other words, the wrongful cause of the injury.

Plaintiffs claim that they were "unaware of any connection between his use of Testim and the clots in his legs and pulmonary embolisms in his lungs" until March 31, 2014.  Compl. ¶ 49.  Defendants argue that there was ample information available to plaintiffs in June 2010 that would have enabled them to discover the correlation between Mr. Potts's injuries and his use of Testim.  *See* Def. Auxilium's Mem. in Opp. to Pls.' Mot. to Remand at 8-9.  This argument, however, involves factual determinations that the Court cannot appropriately make in the present posture of the case.  Though defendants ultimately may succeed in establishing their limitations defense, the Court cannot say, as governing Seventh Circuit case law requires, that plaintiffs have "no chance of success" on this issue or that "there [is no] reasonable possibility that a state court would rule" in their favor.  *Poulos*, 959 F.2d at 69.  Accordingly, defendants have failed to show that Dr. Funk was fraudulently joined.

**Conclusion**

For the foregoing reasons, the Court grants plaintiffs' motion to remand [Case No. 14 C 1748, dkt. no. 419]. Case No. 14 C 7902 is hereby remanded to the Circuit Court of Baldwin County, Alabama.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: March 2, 2015